IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JEANIE LOUISE CASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-01789-JHE |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Jeanie Louise Cash ("Cash") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Cash timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED,** and this action **REMANDED**.

**I. Factual and Procedural History**

Cash protectively filed an application for a period of disability and DIB on May 3, 2016, alleging she became unable to work beginning September 15, 2013. (Tr. 514-15). The Agency initially denied Cash's application and Cash requested a hearing, where she appeared on March 1, 2018. (Tr. 392-422). After the hearing, the Administrative Law Judge ("ALJ") denied Cash's

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

1

claim on August 10, 2018. (Tr. 81-109). Cash sought review by the Appeals Council, but it denied her request on May 14, 2019. (Tr. 8-11). On September 6, 2019, the Appeals Council set aside its earlier decision to consider additional information, but again denied the request for review. (Tr. 17-7). On that date, the ALJ's decision became the final decision of the Commissioner. On November 4, 2019, Cash initiated this action. (*See* doc. 1).

Cash was forty-four years old on her alleged onset date. (Tr. 66). Cash has a GED and past relevant work as an office manager, accounting clerk, and tax preparer. (Tr. 403, 418-19).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Cash met the insured status requirements of the Social Security Act through December 31, 2020, and had not engaged in substantial gainful activity after her alleged onset date of September 15, 2013. (Tr. 86). At Step Two, the ALJ found Cash has the following severe impairments: obesity; degenerative disc disease ("DDD") of the cervical, lumbar, and thoracic spines; headaches, irritable bowel syndrome ("IBS"); degenerative joint disease ("DJD") of the right hip; anxiety and depression. (Tr. 86-87). At Step Three, the ALJ found Cash did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 87-90).

Before proceeding to Step Four, the ALJ determined Cash's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Cash has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except can understand, remember and carry out short/simple instructions, and attend to those

> simple instructions and tasks for two-hour blocks of time; contact with the public should be causal [sic], which I define as incidental to duties performed; no more than occasional interaction with coworkers; changes in the work setting should be gradual and infrequent, and in addition due to the need to take bathroom breaks, off task five percent of the time on a consistent basis.

(Tr. 90).

At Step Four, the ALJ determined that, through the date last insured, Cash was unable to perform any past relevant work. (Tr. 101). At Step Five, the ALJ determined, based on Cash's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Cash could perform, including bench hand/bench and table worker, assembler, and surveillance system monitor. (Tr. 102-03). Therefore, the ALJ determined Cash has not been under a disability and denied her claim. (Tr. 103).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Cash raises four arguments: (1) the Appeals Council erred by denying review after she submitted additional evidence; (2) the ALJ failed to adequately develop the record; (3) the ALJ failed to properly weigh the opinion of a treating physician; and (4) the ALJ substituted his opinion for the Commissioner's consultative psychologist. (*See* doc. 11). The Commissioner points out that, despite the 52-page length of Cash's brief, she "cites **zero** evidence and **makes no real argument** in support of" any of these issues. (Doc. 12 at 1) (emphasis in original). Instead, Cash's

brief "is just a factual history with block quotes from case law and regulations." (*Id.*). The Commissioner argues the undersigned should not address any of these issues due to Cash's failure to develop them. (*Id.*). In her reply, Cash characterizes this as "seek[ing] to avoid the issues" she argued, cites the length of her brief, and otherwise repeats, nearly verbatim, portions of the same cursory arguments. (Doc. 13).

The Commissioner's characterization of Cash's brief is correct. Cash makes no arguments specific to the facts of her case and points to nothing in the record to support the errors she raises. Like other judges of this court, the undersigned has addressed this issue before with Cash's counsel. *See, e.g., Wilson v. Soc. Sec. Admin., Comm'r,* No. 4:18-CV-00407-JHE, 2020 WL 1285927, at *3 n.4 (N.D. Ala. Mar. 16, 2020) ("Wilson's arguments as to each of these broad topics consist almost entirely of blockquotes from other opinions, with no application of the cited law to the facts of this case. As other courts have noted, the absence of any sort of development makes it difficult to determine the precise contours of the issues she raises."); *Smith v. Comm'r of Soc. Sec.*, No. 4:17-CV-02055-JHE, 2019 WL 4750073, at *4 (N.D. Ala. Sept. 30, 2019) ("Smith makes no actual argument for why the <u>specific</u> evidence he presented to the Appeals Council is new, material, or chronologically relevant. Instead, he recaps his medical records . . . provides a synopsis of the Appeals Council's rationale for refusing to consider his new evidence . . . blockquotes cases where courts remanded claims to the Commissioner when the Appeals Council erroneously failed to consider evidence . . . and cites the legal standard as a general proposition . . . ."); *Castleman v. Berryhill*, No. 4:18-CV-00498-RDP, 2019 WL 3817636, at *10 (N.D. Ala. Aug. 14, 2019) ("Plaintiff then provides blockquotes from a litany of cases, without ever applying the facts of this case to those rules."); *Morgan v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019) ("In support of her

argument . . . Ms. Morgan block quotes [several cases, but] identifies no specific error with the ALJ's consideration of her fibromyalgia, and she fails to explain why she believes the ALJ's evaluation of her fibromyalgia runs afoul of SSR 12-2p . . . . This sort of perfunctory argument gives neither the Commissioner nor the court any guidance about Ms. Morgan's argument aside from the fact that she asserts the existence of an error."). Courts have rejected inadequately-briefed arguments such as the ones Cash raises here. *See Sorter v. Soc. Sec. Admin., Comm'*r, 773 F. App'x 1070, 1073 (11th Cir. 2019); *Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019)) (declining to address one of the plaintiff's arguments because she raised it "in a perfunctory manner without supporting arguments"); *Morgan*, 2019 WL 1466259 at *3. Nevertheless, because the court's obligation is to determine whether the Commissioner's findings are supported by substantial evidence, the undersigned will address Cash's arguments—to the extent she actually raises arguments—individually, instead of refusing to consider them at all.

### A. The Appeals Council Did Not Err in Assessing Cash's New Evidence

Cash's first allegation of error is that the Appeals Council erroneously assessed evidence she submitted to it after the ALJ's decision. (Doc. 11 at 19-29).

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously presented to the ALJ, and that

7

evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

The Appeals Council rejected all of the evidence Cash submitted to it. In its September 6, 2019 decision, the Appeals Council found: (1) evidence from Northside Medical Associates dated December 6, 2017 was "not new because it is a copy of Exhibit 38F, page 22"; (2) reports from Alabama CancerCare (June 4-28, 2018), Northside Medical Associates (July 21, 2017 through July 19, 2018), Mercy Clinic (September 16, 2014 through December 4, 2015), UAB Hospital (May 15-21, 2016), and Anniston Medical Clinic (May 21, 2018 through July 2, 2018) did "not show a reasonable probability that it would change the outcome of the decision"; and (3) reports from OrthoSports Associates (December 3, 2018) and Northside Medical Associates (August 24, 2018 through May 23, 2019) did "not relate to the period at issue" because the ALJ decided her case through August 15, 2018. (Tr. 2).

Cash spends roughly ten pages pointing to the evidence she submitted to the Appeals Council (which she summarized earlier in her brief, (*see* doc. 11 at 8-15)), citing the legal standard, and pointing to other cases where courts have remanded claims based on Appeals Council error in considering evidence submitted to it. (Doc. 11 at 19-29). This is exactly what Cash's counsel did in *Smith*, 2019 WL 4750073, quoted above. The only argument Cash raises is in the heading of her argument, when she states "[t]he Appeals Council wrongly denied review and failed to remand

8

the claim after submission of new, material, relevant and chronologically relevant stating that the pre-decision evidence does not show a reasonable probability that it would change the outcome of the decision and that the post-decision evidence does not relate to the period at issue." (Doc. 11 at 19). It is unclear how Cash contends the Appeals Council erred in its treatment of any of the evidence other than the fact that it rejected the evidence. There is no indication of why any individual piece of evidence is chronologically relevant, or how any evidence conflicts with the ALJ's decision, or even which of Cash's impairments she alleges the evidence supports.

While some of the evidence (i.e., the evidence that was not previously submitted as Exhibit 38F, page 22) is new, the Appeals Council did not err in considering it. The medical evidence postdating the ALJ's decision is often explicit that it deals with subsequent problems. For example, Cash's December 3, 2018 visit to OrthoSports Associates for shoulder, neck, and upper back pain notes Cash's "symptoms have been present for 3 MONTHS," (tr. 15), which puts the onset of those symptoms after the August 15, 2018 ALJ decision. Although Cash complained about sporadically of cervical and neck pain, (*see, e.g.,* tr. 710 (April 2016 complaint of "neck locking up")), she also denied neck pain much more recently than that, (*see, e.g.,* tr. 1567 (denying neck, back, and joint pain in January 2018)). It is true it is not always the case that evidence postdating the ALJ's decision is chronologically irrelevant; sometimes the evidence relates back to the date of the ALJ's decision. *Washington*, 806 F.3d at 1322. But Cash points to nothing connecting any of the new evidence rejected by the Appeals Council as not chronologically relevant, including the OrthoSports evidence, to any of her previous symptoms. *See Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (finding later-submitted evidence not chronologically relevant where physician "did not discuss his findings in relation to [the

claimant's] earlier medical records and treatment" and it did not appear to be based on that material).

Furthermore, none of the evidence Cash submitted is material either. The undersigned's review of the evidence does not show anything that would contradict the ALJ's findings such that the evidence would have had a reasonable probability of changing the outcome. As the Commissioner notes, Cash's new evidence showed largely unremarkable symptoms or slight variations from what the medical evidence before the ALJ showed. Cash identifies nothing, and the undersigned has found nothing, that conflicts with the ALJ's assessment. Accordingly, remand is inappropriate.

### B. The ALJ Did Not Fail to Develop the Record

Cash's next argument, presented in a blockquote and a single sentence, is that the ALJ failed to develop a full and fair record. (Doc. 11 at 29). She appears to base this solely on the fact she submitted additional evidence to the Appeals Council. (*Id.*).

It is true "the ALJ has a duty to develop the record fully and fairly." *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Social security regulations provide that "when the evidence [on record] . . . is inadequate for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e), 416.912(e). However, there is no apparent reason the record before the ALJ was insufficient for him to make a determination as to Cash's disability, particularly when (1) Cash's counsel at the hearing before the ALJ explicitly confirmed that the record was complete, (tr. 396), and (2) none of the evidence Cash submitted to the Appeals Council is material, as stated above. With no argument before the court to show <u>why</u> the record was allegedly incomplete or unfair, and no apparent gaps in the record, the undersigned cannot say the ALJ erred in developing the record.

### C. The ALJ Did Not Err in Weighing Cash's Treating Physician's Opinion

Cash's third argument is that the ALJ erred by giving only partial weight to an opinion, allegedly made by her treating physician, that she was disabled. (Doc. 11 at 29-41).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

This section of Cash's brief contains a more than five-page blockquote of *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259-1264 (11th Cir. 2019), (doc. 11 at 30-35), plus less lengthy blockquotes from and citations to a number of other cases, (*id.* at 35-41). As with the other issues Cash raises, she never connects any of these to the evidence in her case. Puzzlingly, Cash refers to the physician at issue as "Plaintiff's treating physician (unnamed)," so the undersigned is at a loss as to how she determined, or the undersigned can determine, that this physician was a treating

11

physician at all.  Cash's analysis of this is limited to her contention that "[t]he doctor's opinion in this case is well supported by clinical and laboratory findings, and not inconsistent with other substantial evidence" and that "[a] review of the factors defined in *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) shows there is no valid basis for rejecting the opinion of the treating physician." (Doc. 11 at 38).  Cash points to no evidence consistent with the opinion and no clinical or laboratory findings supporting it.

The opinion at issue is a two-page form consisting of a Physical Capacities Evaluation and a Clinical Assessment of Pain, both completed on November 8, 2016.  (Tr. 1287-88).  The opinion is signed, but the signing physician did not print his or her name and did not fill in the blank indicating the name of the facility.[4]  (Tr. 1287-88).  The Physical Capacities Evaluation is a form providing spaces for the physician to indicate how many days of work Cash could be expected to miss and whether Cash could never, rarely, occasionally, or frequently perform specific types of work, numbers for the physician to circle how many hours Cash can sit or stand/walk during an eight-hour workday, and a space for the physician to "briefly describe the degree and basis for any restrictions" provided.  (Tr. 1287).  The physician indicated, among other things, that Cash can never climb, bend, operate motor vehicles, or work with or around hazardous machinery, can rarely push/pull, reach, or work around environmental problems, and can occasionally perform both fine and gross manipulation.  (Tr. 1287).  He or she also indicated Cash could sit for eight hours, stand/walk for two hours, and would miss more than four days of work per month.  (Tr. 1287).  The physician attributed this to "chronic pain that prevents [Cash] from functioning." (Tr. 1287).

---

[4] Cash visited Dr. Ricky Tubbs at Alabama Anesthesiology & Pain Consultants on the same date the Physical Capacities Evaluation form was signed, (tr. 1316-19), but the signature on the evaluation does not appear to match Dr. Tubbs' signature. (*Compare* tr. 1287-88 *with* tr. 1319).

The Clinical Assessment of Pain form provides a number of questions with answers for the physician to circle. (Tr. 1288). The physician indicated the following: (1) Pain is present to such an extent as to be distracting to adequate performance of daily activities or work; (2) Physical activity causes Cash greatly increased pain to such a degree that it would distract her from tasks or cause her to totally abandon them; and (3) side effects of Cash's medication cause her to be totally restricted and unable to function at a productive level of work. (Tr. 1288).

The ALJ gave this opinion partial weight. (Tr. 99). He pointed to the visit the same day with Dr. Tubbs indicating a number of relatively ordinary findings. Specifically, the ALJ noted Cash stated to Dr. Tubbs that her activities had been improved after taking medications, and the medications had relieved her pain by 40%. (Tr. 1316). An examination at the same visit showed Cash was in no acute distress, with a normal gait and no abnormalities noted on motor examination. (Tr. 1317). Cash also could heel and toe walk at this visit and had normal finger-to-nose testing. (Tr. 1317).

Because Cash does not provide anything to bolster that the opinion was that of a treating physician—or, for that matter, of a physician at all—there is no basis for the court to conclude the ALJ was required to give it controlling weight. *See Crawford,* 363 F.3d at 1160. For the same reason, Cash does not (and cannot) point to any of the physician's findings in the record supporting his or her opinion.[5] Accepting for the sake of the argument that the opinion at issue was that of a treating physician, though, the ALJ articulated sufficient good cause to reject it because it was not

---

[5] The lack of evidence of anything about this physician also make many of Cash's citations inapt. For example, Cash states: "An ALJ's 'lack of explanation' for failing to address a treating physician's opinion is 'particularly troublesome' when that physician was the claimant's 'long-time treating physician.'" (Doc. 11 at 38) (citing *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985)). Of course, there is nothing to support that this physician had any treating relationship with Cash, much less a "long-time" treating relationship.

13

consistent with other evidence from the same day it was signed.[6] The ALJ pointed to evidence from the November 8, 2016 examination with Dr. Tubbs revealing no acute distress, no abnormalities on motor examination, and indicating that while Cash experienced pain, her pain was relieved substantially by her medications. Although the ALJ did not specifically state this, the examination also undermined the unnamed physician's opinion that the side effects of Cash's medications rendered her unable to function; Dr. Tubbs noted "[s]ide effects of current medications nausea & vomiting," (tr. 1306), but nothing indicating such side effects were incapacitating.[7] Furthermore, to the extent the form opinion concluded Cash was totally disabled, the Eleventh Circuit has recently reiterated that such an opinion is an administrative finding and not a medical opinion; it is not dispositive of disability and an ALJ is still required to scrutinize the medical source's opinion (as he did here). *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338-39 (11th Cir. 2021). The undersigned cannot say the ALJ erred in assigning the physician's

---

[6] The undersigned also notes the form is conclusory because it fails to provide any explanation for its conclusions. Several courts have criticized "form reports" such as the one at issue here where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions"). The undersigned acknowledges the Eleventh Circuit has found the use of such forms "is not a basis, *in and of itself*, [to] discount them as conclusory." *Schink*, 935 F.3d at 1262.

[7] Subsequent visits to Dr. Tubbs revealed no medication side effects at all. (*See* tr. 1301, 1306).

form opinion only partial weight, particularly when Cash does not identify anything in the opinion that ought to have been given more weight.[8]

### D. The ALJ Erred in Evaluating the Consultative Examiner's Opinion

Cash's final argument is that the ALJ substituted his judgment for that of consultative physician Dr. Robert Storjohann, a licensed clinical psychologist. (Doc. 11 at 42-51).

As with two of the other three sections of her brief, Cash spends the bulk of this section blockquoting opinions. This mostly involves *Wilder v. Chater*, 64 F.3d. 335 (7th Cir. 1995), in which the Seventh Circuit found an ALJ had erred because he went "against the only medical evidence in the case," *id.* at 337, and cases from this circuit applying *Wilder's* reasoning. (Doc. 11 at 43-51). *Wilder* is an out-of-circuit case applying a standard that the Eleventh Circuit has "decline[d] . . . to adopt" on multiple occasions, owing to the Eleventh Circuit's "own standard for reviewing the opinions of agency-appointed consulting physicians." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (citing *Crawford*, 363 F.3d at 1160). The undersigned declines to apply *Wilder* here because the ALJ's assessment of Dr. Storjohann's opinion was fatally flawed in a way that does not implicate *Wilder's* reasoning.

Dr. Storjohann completed a Psychological Consultative Examination on August 1, 2016, in which he opined Cash "has chronic and severe mental health difficulties" including bipolar Type I disorder, post-traumatic stress disorder, generalized anxiety disorder, and borderline personality disorder. (Tr. 815). Dr. Storjohann opined Cash's conditions would significantly impair her ability to understand, carry out, and remember work-related instructions; sustain concentration and persist in work-related activity at a reasonable pace; maintain social interaction in a consistent and

---

[8] Since the ALJ limited Cash to a range of sedentary work, most of the postural restrictions in the opinion would seem to be beside the point when the unnamed physician also stated Cash could sit for an eight-hour workday, (*see* tr. 1287).

independent basis with supervisors, coworkers, and the general public; and deal with normal pressures in a competitive work setting. (Tr. 816). The ALJ assigned Dr. Storjohann's opinion little weight, stating "Dr. Storjohann did not have the claimant's medical records to review, which showed during multiple medical appointments that the claimant had normal psychological examinations." (Tr. 101).

Although a one-time examiner's opinion is not entitled to great weight, *see Crawford*, 363 F.3d at 1160, the ALJ's rationale for rejecting Dr. Storjohann's opinion does not pass muster. First, the ALJ is simply incorrect that Dr. Storjohann did not review Cash's medical records. Dr. Storjohann specifically noted he reviewed "the medical evidence of record provided by the [Social Security Administration's Disability Determination Service]" and "those findings were considered in the overall assessment of the claimant." (Tr. 811). Second, to the extent the ALJ pointed to medical records postdating Dr. Storjohann's evaluation to undermine it, those records are cherrypicked and irrelevant to the issue at hand. The ALJ cited five specific examples of Cash's normal psychological state: (1) a September 30, 2016 visit to Dr. Carl H. Russell for "Thumb locking up on left hand," (tr. 821-22); a September 9, 2016 visit to Dr. Russell for "Sciatica Pain," (tr. 824, 826); an August 25, 2016 visit to Dr. Russell for "GI Problems," (tr. 827-88); a September 25, 2017 visit to Dr. Scott Boykin for "Rash/Skin Lesion," (tr. 1633); and an August 4, 2016 visit to Dr. Ashley Davis for abdominal pain, (tr. 1655-56). None of these examinations even remotely relate to Cash's psychological or mental conditions, and all of the references to Cash's psychological state are perfunctory comments in treatment notes concerning Cash's actual complaints. There is no reason to suppose Cash would have been asked to provide a detailed account of her psychological condition at any of these visits for acute physiological problems, and it makes little sense for the ALJ to have used the cursory notes at these visits to discredit a

psychological assessment by a clinical psychologist. *See Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1219 (N.D. Ala. 2004) (finding it unreasonable for ALJ to reject consulting psychologist's opinion "based upon the lack of a diagnosis or notation of mental illness by her medical doctors who saw her for specific physical problems"); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). *Cf. Crow v. Berryhill*, 358 F. Supp. 3d 1289, 1295 (N.D. Ala. 2019) (finding notations that claimant was "fully oriented and in no acute distress" at emergency room visits unrelated to mental health provided little support for ALJ to reject treating psychiatrist's assessment).

Since the ALJ provided what amounts, on scrutiny, to no support for his assessment of Dr. Storjohann's opinion, his decision to assign little weight to Dr. Storjohann's opinion was not supported by substantial evidence.[9] Accordingly, this case must be remanded for the Commissioner to adequately consider that opinion.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Cash's claim for a period of disability and DIB is **REVERSED**, and this action is **REMANDED** for reevaluation consistent with this memorandum opinion. A separate order will be entered.

---

[9] Unlike in *Wilder*, Dr. Storjohann's opinion is not the only psychological evidence in this case. The ALJ also considered the opinion of Dr. Larry Dennis, a Disability Determination Services Psychologist, and assigned it partial weight. (Tr. 101). The undersigned cannot say how the ALJ would have assessed Dr. Dennis's opinion had he not erred in assessing Dr. Storjohann's opinion.

17

DONE this 24th day of March, 2021.

                                        **JOHN H. ENGLAND, III**
                                        UNITED STATES MAGISTRATE JUDGE